PHILLIP A. TALBERT
United States Attorney
JESSICA DELANEY
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

**FILED**
Apr 04, 2024
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

**SEALED**

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STEPHAN JAMES EVANOVICH,<br>TREVOR CHRISTOPHER FOUNTAIN,<br>JONATHAN MATTHEW CURL, and<br>ANDREA CARTER,<br><br>Defendants. | CASE NO. 2:24-cr-0079 TLN<br><br>18 U.S.C. § 371 – Conspiracy to Transport Stolen Property Interstate; 18 U.S.C. § 2314 – Interstate Transportation of Stolen Property (4 counts); 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) - Criminal Forfeiture |

## INDICTMENT

COUNT ONE: [18 U.S.C. § 371 – Conspiracy to Transport Stolen Property Interstate]

The Grand Jury charges:

STEPHAN JAMES EVANOVICH,
TREVOR CHRISTOPHER FOUNTAIN,
JONATHAN MATTHEW CURL, and
ANDREA CARTER,

defendants herein, as follows:

INTRODUCTION

At all relevant times,

1.  Defendants STEPHAN JAMES EVANOVICH and TREVOR CHRISTOPHER

INDICTMENT                              1

1  FOUNTAIN resided in Sacramento County, which is within the Eastern District and State of California.

2.  Defendant JONATHAN MATTHEW CURL resided in Sacramento County, which is within the Eastern District and State of California. Before and during the conspiracy, CURL was employed by telecommunications companies in roles in which he was able to obtain access information for communications tower sites.

3.  Defendant ANDREA CARTER is believed to have resided variously in San Joaquin and Sacramento Counties, which are both within the Eastern District and State of California.

4.  Talk 2 Me Wireless, LLC ("Talk 2 Me") was a purported telecommunications company operated by EVANOVICH in Sacramento County. At the time of the conspiracy, Talk 2 Me operated out of EVANOVICH's residence in Elverta, California.

5.  Telecommunications Company 1 is a worldwide telecommunications company with tower sites located throughout the United States.

6.  Telecommunications Company 2 is a worldwide telecommunications company with tower sites located throughout the United States.

7.  Telecommunications Company 3 is a third-party telecommunications equipment vendor and logistics manager. Telecommunications Company 3 purchases decommissioned rectifiers, refurbishes them, and then resells them. At all times relevant, the repair and distribution center for Telecommunications Company 3 was located in Coppell, Texas. At all times relevant, Telecommunications Company 3 received refurbished rectifiers at its Coppell, Texas warehouse.

8.  Telecommunications Company 4 is a third-party telecommunications equipment vendor and logistics manager. Telecommunications Company 4 purchases decommissioned rectifiers, refurbishes them, and then resells them. At all times relevant, the headquarters for Telecommunications Company 4 was in Arvada, Colorado. At all times relevant, Telecommunications Company 4 received shipments of rectifiers at its headquarters.

9.  Telecommunications Company 5 is a third-party telecommunications company that provides refurbished equipment to telecommunications companies. At all times relevant, Telecommunications Company 5 was headquartered in and received shipments of refurbished rectifiers in Skokie, Illinois.

10. Telecommunications Company 6 is a logistics and asset management company that, in part, provides equipment to telecommunications companies. At all times relevant, Telecommunications Company 6 received shipments of used rectifiers at their location in Grand Junction, Colorado.

BACKGROUND ON COMMUNICATIONS TOWERS

11. Rectifiers are devices that convert alternating current into direct current. Each rectifier has a unique serial number.

12. Communications towers have multiple rectifiers which make up a tertiary power source for the communications towers. The first method of powering a communications tower is direct power. A system of generators serves as an alternate method of power if direct power fails. Rectifiers are a third power source. When more than one rectifier is stolen, a battery can power the tower for only four to eight hours. If all three forms of power fail, it is possible the communications tower would also lose power and no calls, including emergency 911 calls, could be completed.

13. Redundancy is built into the system. Towers operate on a system which allows the communications tower to continue to operate normally when a single rectifier is taken offline, whether due to breaking from normal wear and tear or being stolen. However, if more than one rectifier is taken offline, the communications tower reverts to battery power.

14. When a rectifier is stolen from a communications tower, such as one owned by Telecommunications Company 1, it creates a minor alarm. A National Operations Systems technician then researches the issue and determine a course of action. In particular, when there is a power outage from the direct power supplier, a technician needs to be deployed within hours, as otherwise the communications tower will lose power and be taken off-line.

15. Telecommunications companies such as Telecommunications Company 1 and Telecommunications Company 2 house rectifiers at their communications towers. Communications towers can be accessed by known codes or by regional keys, called Arrow keys. These codes and/or keys are provided to contractors to handle maintenance on tower sites. Contractors may also sub-contract tower work and may provide the codes and keys in those instances. Contractors are not authorized to duplicate keys without receiving authorization from the owner of the communications tower.

INDICTMENT                                3

16. Telecommunications companies regularly decommission and redeploy certain assets such as rectifiers. This may be done through third party vendors. Decommissioned rectifiers may be refurbished and then resold. The resale of a decommissioned rectifier can lower operating costs for a telecommunications company.

## THE CONSPIRACY

17. Beginning at least no later than in or about March 2022, and continuing through in or about February 2024, in the State and Eastern District of California and elsewhere, EVANOVICH, FOUNTAIN, CURL, and CARTER knowingly and willfully combined, conspired, confederated, and agreed with each other and with others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is, to transport, transmit, and transfer in interstate commerce goods, wares, and merchandise having a value of $5,000 or more, knowing the same to have been stolen, converted, and taken by fraud, in violation of Title 18, United States Code, Section 2314.

18. The purpose of the conspiracy was to sell stolen property, to wit: rectifiers and other telecommunications equipment, to third-party vendors for profit. CURL, FOUNTAIN, CARTER, and others known and unknown to the Grand Jury, stole rectifiers and other equipment from telecommunications tower sites, within the Eastern District of California and elsewhere, and transported them to EVANOVICH, within the Eastern District of California. EVANOVICH then shipped the stolen property across interstate lines from California to locations in Colorado, Texas, Illinois, and elsewhere. EVANOVICH represented to the buyers that he had the legal authority to sell the property.

## MANNER AND MEANS

19. The manner and means by which EVANOVICH, FOUNTAIN, CURL, CARTER, and others sought to accomplish the object of the conspiracy included, among others, the following:

20. At some time before in or about October 2021, CURL obtained a copy of a spreadsheet detailing the access information for communications tower sites throughout Northern California. The spreadsheet was a document created by Telecommunications Company 1 and used by technicians to access communications tower sites throughout Northern California in the performance of their regular job duties. CURL maintained a digital copy of the spreadsheet.

21. Through his former employment at telecommunications companies, CURL was familiar

with the methods of accessing communications tower sites, including the use of information contained on the spreadsheet. CURL provided copies of the spreadsheet to CARTER and other conspirators and taught them how to use the information to access communications tower sites. Through his employment, CURL also obtained a sheet of access codes that could be used to enter additional tower sites. CURL provided a copy of those codes to other conspirators. CURL was aware that Telecommunications Company 1 possessed Arrow keys, which could be used on all locks and doors for their worksites. Only employees of Telecommunications Company 1 and approved contractors were permitted to possess copies of the keys. At various times throughout the course of the conspiracy, CURL, FOUNTAIN and CARTER used an Arrow key to access tower sites.

22.  Using access codes, keys, and sometimes brute force, CURL, FOUNTAIN, CARTER, and others unlawfully entered communications tower sites located in California, Nevada, Colorado, and elsewhere. The conspirators often wore hardhats and high-visibility vests similar to those worn by technicians in order to disguise their actions. The conspirators also concocted excuses to explain their presence at the communications tower sites, should they be questioned. These excuses included the false claim that they were performing work orders to remove damaged or obsolete equipment, or that they were responding to rectifier redundancy alarms.

23.  At times throughout the conspiracy, when confronted by law enforcement officers at communications tower sites, FOUNTAIN stated that he worked for the company Talk 2 Me. As the scheme progressed, FOUNTAIN obtained decals for Talk 2 Me which he placed on his vehicle to attempt to add legitimacy to his actions. He also put unauthorized decals for Telecommunications Company 1 on his vehicle.

24.  EVANOVICH helped coordinate and organize actions by members of the conspiracy. For example, he told conspirators which tower sites had recently been accessed by other conspirators. He also provided guidance on how to avoid law enforcement detection.

25.  After gaining access to the communications towers, CURL, FOUNTAIN, CARTER, and others stole telecommunications equipment, including rectifiers. After stealing the equipment, they transported it to EVANOVICH in Elverta, California.

26.  In addition, CARTER and CURL trained other conspirators to steal telecommunications

INDICTMENT

5

equipment from towers and transport it to EVANOVICH. They did this by providing instruction and by having other conspirators accompany them to steal equipment.

27. Upon receiving stolen equipment, EVANOVICH paid conspirators in cash or through financial service platforms such as CashApp. EVANOVICH instructed conspirators to create a CashApp account with "Telecom" or something similar in the account name so that payments appeared legitimate. He also instructed conspirators to create false invoices for the rectifiers that they stole and delivered to him.

28. Between in or about May 2022 and in or about July 2022, through his purported company Talk 2 Me, EVANOVICH established vendor relationships with Telecommunications Company 3, Telecommunications Company 4, and Telecommunications Company 5. In October 2023, through his purported Company Talk 2 Me, EVANOVICH established a vendor relationship with Telecommunications Company 6. EVANOVICH communicated with the vendors to receive purchase orders and to provide them with rectifiers.

29. After receiving a purchase order, EVANOVICH sent stockpiled rectifiers across interstate lines to the requesting party. When EVANOVICH did not have rectifiers available, he notified conspirators of pending purchase orders. Conspirators, including FOUNTAIN, CURL, and CARTER, would then access telecommunications sites and steal rectifiers.

30. EVANOVICH used pseudonyms when discussing purchase orders and invoices with legitimate third-party vendors. EVANOVICH represented himself to be two separate persons, with separate jobs within Talk 2 Me: Stephan James and Steve Evans. Both Stephan James and Steve Evans were actually EVANOVICH.

31. EVANOVICH used the proceeds from the sales to pay his conspirators and to fund his lifestyle.

OVERT ACTS

In furtherance of the conspiracy, and to accomplish its object and purposes, at least one of the conspirators committed, or caused to be committed, in the Eastern District of California and elsewhere, on or about the dates indicated, the following overt acts, among others:

32. On or about April 4, 2022, CURL sent an email to CARTER with an attachment that

1 provided information on accessing telecommunications tower sites belonging to Telecommunications
2 Company 1.
3      33.     On or about April 12, 2022, EVANOVICH sold a rectifier to Telecommunications
4 Company 3, using an on-line platform.
5      34.     On or about May 12, 2022, EVANOVICH established a Google email account for the
6 purported business, Talk 2 Me.
7      35.     On or about May 20, 2022, FOUNTAIN entered a tower site belonging to
8 Telecommunications Company 1 without authorization. FOUNTAIN attempted to steal rectifiers.
9      36.     On or about May 22, 2022, CURL stole rectifiers from AT&T tower sites located
10 between Lodi and Stockton, California.
11      37.     On or about May 23, 2022, EVANOVICH received and agreed to fulfill a purchase order
12 from Telecommunications Company 3. The purchase order was for 11 rectifiers and requested shipping
13 to Telecommunications Company 3's warehouse in Coppell, Texas. The total purchase price for this
14 order was approximately $4,000.
15      38.     On or about May 23, 2022, EVANOVICH paid CURL for stolen rectifiers by transferring
16 $200 through CashApp.
17      39.     On or about May 24, 2022, EVANOVICH paid CURL for stolen rectifiers by transferring
18 $500 through CashApp.
19      40.     On or about June 29, 2022, EVANOVICH received and agreed to fulfill a purchase order
20 from Telecommunications Company 4. The purchase order was for 43 rectifiers. The total purchase
21 price for this order was approximately $18,825.00.
22      41.     On or about June 28, 2022, FOUNTAIN sent a text message to EVANOVICH saying,
23 "Need the codes again please new phone." EVANOVICH responded to FOUNTAIN telling him that
24 CURL would send the code. EVANOVICH then sent, via WhatsApp, a picture of a sheet of paper
25 listing various telecommunications companies with four-digit access codes associated with the
26 companies.
27      42.     On or about July 9, 2022, FOUNTAIN sent a text message to EVANOVICH to confirm
28 that he had acquired 16 rectifiers. He sent a photo of shipping boxes and the message, "Boxed up ready

INDICTMENT                    7

to ship" to EVANOVICH.

43. On or about July 11, 2022, FOUNTAIN sent a message to CURL with the numerical combination to enter Telecommunications Company 2's communications towers throughout Southern California.

44. On or about July 12, 2022, FOUNTAIN sent a text message to CURL asking for a door code to a tower site belonging to Telecommunications Company 1. CURL responded with a five-digit code.

45. On or about July 19, 2022, EVANOVICH received a purchase order for 13 rectifiers from Telecommunications Company 5. The total purchase price for this order was approximately $7,150.00.

46. Between on or about July 30, 2022, and on or about August 22, 2022, FOUNTAIN entered multiple communications tower sites in Colorado without authorization. FOUNTAIN stole rectifiers, radio antenna repeaters, and other telecommunications equipment from sites belonging to Telecommunications Company 1 and Telecommunications Company 2.

47. Between on or about August 15 and on or about August 16, 2022, CURL stole no fewer than 18 rectifiers from seven different communications towers in Sacramento County and elsewhere. Seventeen rectifiers stolen from those tower sites were then shipped by Talk 2 Me to Telecommunications Company 4.

48. Between on or about October 28, 2022, and on or about October 29, 2022, CARTER stole rectifiers from at least two communications tower sites in Antioch, California, and Benicia, California.

49. On or about November 3, 2022, CARTER sent a text message to another conspirator that said, "Coming to get you. We're gonna go hit some Towers you down."

50. Between on or about November 23, 2022, and on or about December 21, 2022, EVANOVICH transferred no less than $4,720 through CashApp to the same conspirator that CARTER sent the text message to on November 3, 2022.

51. On or about November 11, 2022, EVANOVICH paid CARTER approximately $1,060 for stolen rectifiers by transferring money to her through CashApp. That same day, EVANOVICH

INDICTMENT

8

1  transferred an additional $200 through CashApp to CARTER's account as payment for stolen
2  equipment.
3      52.   On or about December 19, 2022, CARTER and another conspirator unlawfully entered a
4  communications tower site belonging to Telecommunications Company 1. CARTER and the same
5  conspirator stole several rectifiers from the site.
6      53.   On or about November 1, 2023, EVANOVICH signed a New Supplier Set-Up Form with
7  Telecommunications Company 6, establishing a new vendor relationship.
8      54.   Between on or about May 23, 2022, and on or about October 27, 2023, EVANOVICH
9  sold at least approximately 10 stolen rectifiers to Telecommunications Company 3.
10     55.   Between on or about June 29, 2022, and on or about November 29, 2023, EVANOVICH
11 sold at least approximately 350 stolen rectifiers to Telecommunications Company 4.
12     56.   Between on or about July 19, 2022, and on or about November 6, 2023, EVANOVICH
13 sold at least approximately 80 stolen rectifiers to Telecommunications Company 5.
14     57.   Between on or about October 20, 2023, and on or about February 28, 2024,
15 EVANOVICH sold at least approximately 45 stolen rectifiers to Telecommunications Company 6.
16     All in violation of Title 18, United States Code, Section 371.
17 <u>COUNTS TWO THROUGH FIVE</u>: [18 U.S.C. § 2314 – Interstate Transportation of Stolen Property]
18     The Grand Jury further charges: T H A T
19                 STEPHAN JAMES EVANOVICH,
20 defendant herein, between on or about May 19, 2022, and continuing through on or about February 9,
21 2024, in Sacramento County, within the State and Eastern District of California, and elsewhere,
22 transported, transmitted, and transferred in interstate commerce goods, wares, and merchandise of the
23 value of $5,000 or more, that is, rectifiers, knowing the same to have been stolen:
24 //
25 //
26 //
27 //
28 //

INDICTMENT                          9

| Count | Transportation On or About Dates | Value of Stolen Property | Location of Receipt |
|---|---|---|---|
| 2 | Between May 23, 2022, and July 14, 2022 | Not less than $8,000 | Coppell, Texas |
| 3 | Between July 11, 2022, and November 3, 2022 | Not less than $62,800 | Arvada, Colorado |
| 4 | Between May 19, 2023, and June 6, 2023 | Not less than $16,650 | Skokie, Illinois |
| 5 | Between December 20, 2023, and February 8, 2024 | Not less than $7,000 | Grand Junction, Colorado |

All in violation of Title 18, United States Code, Section 2314.

FORFEITURE ALLEGATION: [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) - Criminal Forfeiture]

1. Upon conviction of one or more of the offenses alleged in Counts One through Five of this Indictment, defendants STEPHAN JAMES EVANOVICH, TREVOR CHRISTOPHER FOUNTAIN, JONATHON MATTHEW CURL, and ANDREA CARTER shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, which constitutes or is derived from proceeds traceable to such violations, including but not limited to the following:

    a. A sum of money equal to the total amount of proceeds traceable to such offenses, for which defendants are convicted.

2. If any property subject to forfeiture as a result of the offenses alleged in Counts One through Five of this Indictment, for which defendants are convicted:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

INDICTMENT

10

1  it is the intent of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to
2  seek forfeiture of any other property of said defendants, up to the value of the property subject to
3  forfeiture.

4                                              A TRUE BILL.

5                                              /s/ Signature on file w/AUSA

6                                              _____
7                                              FOREPERSON
8  _____
   PHILLIP A. TALBERT
9  United States Attorney

INDICTMENT                                      11

2:24-cr-0079 TLN

No. _____

# UNITED STATES DISTRICT COURT

*Eastern District of California*

*Criminal Division*

THE UNITED STATES OF AMERICA

*vs.*

STEPHAN JAMES EVANOVICH,
TREVOR CHRISTOPHER FOUNTAIN,
JONATHAN MATTHEW CURL, and
ANDREA CARTER

**No Bail Warrant Pending Hearing**
as to all defendants

## I N D I C T M E N T

**VIOLATION(S):**   18 U.S.C. § 371 – Conspiracy to Transport Stolen Property Interstate; 18 U.S.C. § 2314 – Interstate Transportation of Stolen Property (4 counts); 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) - Criminal Forfeiture

*A true bill,*

**/s/ Signature on file w/AUSA**

_____
*Foreman.*

*Filed in open court this* \_\_4th_____ *day*

*of* \_\_April_____, *A.D.* 20 \_24\_\_

/s/ R. Alvarez
_____
*Clerk.*

**No Bail Warrant Pending Hearing**
as to all defendants

*Bail, $* _____

*Carolyn K. Delaney*

GPO 863 525

2:24-cr-0079 TLN

<u>United States v. Evanovich, et. al.</u>
**Penalties for Indictment**

**Defendants**
Stephan James Evanovich
Jonathan Matthew Curl
Trevor Christopher Fountain
Andrea Carter

<u>COUNT 1:</u>           ALL DEFENDANTS

VIOLATION:       18 U.S.C. § 371 – Conspiracy to Violate 18 U.S.C. § 2314 (Interstate Transport of Stolen Property)

PENALTIES:       Maximum of 5 years imprisonment;
                 Fine of $250,000 or twice the gross gain or loss; or
                 Both fine and imprisonment
                 Supervised release of up to 3 years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

<u>COUNTS 2-5:</u>         EVANOVICH ONLY

VIOLATION:       18 U.S.C. § 2314 (Interstate Transport of Stolen Property)

PENALTIES:       Maximum of up to 10 years in prison; or
(each count):    Fine of $250,000 twice the gross gain or loss; or
                 Both fine and imprisonment
                 Supervised release of up to 3 years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

<u>**FORFEITURE ALLEGATION:**</u>   All Defendants

VIOLATION:       18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture

PENALTIES:       As stated in the charging document